1  **DAVID M.C. PETERSON**
   California Bar No. 254498
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  david_peterson@fd.org

5  Attorneys for Mr. Alcazar

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE JEFFREY T. MILLER)**

11 UNITED STATES OF AMERICA,          )    Criminal No. 08CR2576-JM
                                      )
12        Plaintiff,                  )    Date:  September 5, 2008
                                      )    Time:  11:00 a.m.
13 v.                                 )
                                      )    NOTICE OF MOTIONS AND MOTIONS TO:
14 PEDRO ALCAZAR,                     )    1)    COMPEL DISCOVERY/PRESERVE
                                      )          EVIDENCE;
15        Defendant.                  )    2)    SUPPRESS STATEMENTS;
                                      )    3)    DISMISS INDICTMENT FOR FAILURE
16                                    )          TO ALLEGE ESSENTIAL ELEMENTS;
                                      )    4)    DISMISS INDICTMENT FOR SPEEDY
17                                    )          TRIAL VIOLATION; AND
                                      )    5)    GRANT LEAVE TO FILE
18 _____ )          FURTHER MOTIONS

19 TO:    KAREN P. HEWITT. UNITED STATES ATTORNEY; AND
          STEWART YOUNG, ASSISTANT UNITED STATES ATTORNEY:
20

21        **PLEASE TAKE NOTICE** that on Monday, June 30, 2008, at 2:00 p.m., or as soon thereafter as

22 counsel may be heard, the accused, Pedro Alcazar, by and through his attorneys, David M.C. Peterson, and

23 Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions listed below.

24                                   **MOTIONS**

25        Pedro Alcazar, the accused in this case, by and through his attorneys, David M.C. Peterson, and

26 Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United

27 States Constitution, Federal Rules of Criminal Procedure, Rules 8, 12, 14 and 16, 18 U.S.C. § 3161, and all

28 other applicable statutes, case law and local rules, hereby moves this court for an order to:

1)    Compel further discovery and preserve evidence;

2)    Suppress statements;

3)    Dismiss indictment for failure to allege essential elements;

4)    Dismiss indictment for Speedy Trial Act violation; and,

5)    Grant leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,


Dated: August 25, 2008                    */s/ David M.C. Peterson*
                                          David M.C. Peterson
                                          Federal Defenders of San Diego, Inc.
                                          Attorneys for Mr. Alcazar
                                          david_peterson@fd.org

1 | **DAVID M.C. PETERSON**
California Bar No. 254498
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, California  92101-5008
Telephone:  (619) 234-8467
4 | David_Peterson@fd.org

5 | Attorneys for Mr. Pedro Alcazar

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE JEFFREY T. MILLER)**

11 | UNITED STATES OF AMERICA,           )        Criminal No. 08CR2576-JM
                                                          )
12 |          Plaintiff,                             )        Date: September 5, 2008
                                                          )        Time: 11:00 a.m.
13 | v.                                                 )
                                                          )        STATEMENT OF FACTS AND
14 | PEDRO ALCAZAR,                         )        MEMORANDUM OF POINTS AND
                                                          )        AUTHORITIES IN SUPPORT OF
15 |          Defendant.                          )        DEFENDANT'S MOTIONS
                                                          )
16 | _____)

17 | **I.**

18 | **STATEMENT OF FACTS**[1]

19 | Mr. Alcazar was arrested on May 24, 2008.  On May 27, 2008, the government filed a complaint

20 | against Mr. Alcazar.  On May28, 2008, the government filed an amended complaint against Mr. Alcazar.

21 | Both charged him with illegal reentry after deportation, in violation of 8 U.S.C. § 1326.[2]  The statement of

22 | facts incorporated into the Amended Complaint alleges that on May 24, 2008, Mr. Alcazar was apprehended

23 | by Border Patrol Agent Acosta near Ocotillo, California.  A Remote Video Surveillance Operator alerted

24 | Agent Acosta to a gray Ford F-250 heading west on highway 98, and then Eastbound on Interstate 8.  Agent

25

26 | [1] This statement of facts is based upon the Amended Complaint and Statement of Facts Attached
thereto and discovery materials received to date.  Mr. Alcazar in no way admits the accuracy of these facts
27 | and reserves the right to take a position different than or contrary to this statements of facts at trial or in other
motions.
28

[2] The only material difference in the complaints appears to be that the original alleges a deportation
to Honduras, whereas the second complaint alleges a deportation to Mexico.

1    Acosta pulled the vehicle over near the "Coyote Bridges."  Agent Acosta encountered 17 individuals in the

2    F-150.  He questioned the individuals in the vehicle as to their citizenship.  One individual in the vehicle,

3    later identified as Mr. Alcazar, is alleged to have made incriminating statements, namely, that he did not

4    have any legal immigration documents that would allow him to enter, reside or work in the United States.

5    Agent Acosta arrested all seventeen individuals, including Mr. Alcazar, and advised them of their

6    administrative rights, per form I-826.  The I-826 form advises an individual that they have a right to an

7    attorney in their proceedings.  It also advises that they must pay for that attorney themselves.

8        Sometime after 5 p.m. on May 24, 2008, Mr. Alcazar was again questioned, this time by Border

9    Patrol Agent Elizabeth De Vries.  It is alleged that Mr. Alcazar was read his rights per Service Form I-215B

10   in the Spanish language.[3]  He again made incriminating statements about his alleged entry into the United

11   States.  In the course of the interview, Mr. Alcazar complained of a heart condition, and he was taken to the

12   hospital because of that heart condition.

13       The following day, May 25, 2008, Mr. Alcazar was taken out of the hospital, and he was yet again

14   interrogated, this time while being recorded.  In this third interrogation, Mr. Alcazar was again read his

15   <u>Miranda</u> warnings.  It appears that he still had not been advised that his administrative rights no longer

16   applied.  In the interview he made incriminating statements.  At the end of the interview, he again advised

17   of a heart condition, and was told that he would be taken to the hospital again.

18       On June 23, 2008, Mr. Alcazar waived information to different charges, namely two counts of illegal

19   entry, under § 1325 of the same title.  On August 8, 2008, Mr. Alcazar was indicted on the original charge

20   in the Amended Complaint, a single count of 8 U.S.C. § 1326.

21   These motions follow.

22                                **II.**

23                    <u>**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**</u>

24       Mr. Alcazar moves for the production of the following discovery.  His request is not limited to those

25   items that the prosecutor knows of; it includes all discovery listed below that is in the custody, control, care,

26

27       [3] No I-215 form has been produced in discovery.  It is counsel's experience that the I-215 often
28   contains a version of Miranda warnings; it does not contain a clarification that prior administrative rights no
     longer apply.

1  or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868

2  F.2d 1032 (9th Cir. 1989).

3     (1)  The Defendant's Statements.  The government must disclose to the defendant all copies of any

4  written or recorded statements made by the Mr. Alcazar; the substance of any statements made by him

5  which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; see id.,

6  any response by the defendant to interrogation; the substance of any oral statements which the government

7  intends to introduce at trial and any written summaries of the defendant's oral statements contained in the

8  handwritten notes of the government agent; **any response to any Miranda warnings which may have**

9  **been given to the defendant, including all video or audio recordings, as well as rough notes that the**

10  **agent may have taken at the time of defendant's arrest and interrogation** (see United States v. McElroy,

11  697 F.2d 459 (2d Cir. 1982); as well as any other statements by the defendant.  Fed. R. Crim. P.

12  16(a)(1)(A).[4]  **Specifically, Mr. Alcazar is alleged to have made a sworn statement on an I-215B form,**

13  **and he requests that statement be discovered to him, as well as any notes taken by the interrogating**

14  **agent at the time, and any video or audio recording of that statement.**  The Advisory Committee Notes

15  and the 1991 amendments to Rule 16 make clear that the Government must reveal all records containing

16  reference to the defendant's statements, whether oral or written, regardless of whether the government

17  intends to use those statements.  United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing

18  conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements

19  made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

20     (2)  Arrest Reports and Notes.  The defendant also specifically requests that the government turn

21  over all arrest reports, notes and TECS records that relate to the circumstances surrounding his arrest or any

22  questioning.  This request includes, but is not limited to, any rough notes, records, reports, transcripts,

23  referral slips, or other documents in which statements of the defendant or any other discoverable material

24  is contained.  Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland.  The

25  government must produce arrest reports, investigators' notes, memos from arresting officers, sworn

26  statements, and prosecution reports pertaining to the defendant.  See Fed. R. Crim. P. 16(a)(1)(B) and (C),

27

28     [4]  Of course, any of Mr. Alcazar's statements which are exculpatory must be produced as well.  See
Brady v. Maryland, 373 U.S. 83 (1963).

26.2 and 12(I); United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); see also United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming Harris' holding).  Preservation of contemporaneous notes is specifically requested, whether or not the government deems them discoverable at this time.  **In addition, Mr. Alcazar requests copies of all video-surveillance of the area in which he was arrested, on the date of the arrest, as well as the location of all permanent remote surveillance devices.  Further, defendant requests the names of all temporary remote surveillance operators stationed at or near the area of his arrest.**

(3) Brady Material.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case.  Kyles v. Whitley, 514 U.S. 419 (1995).  Under Brady, Kyles and their progeny, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused.  See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).  This includes information obtained from other investigations which exculpates Mr. Alcazar.

(4) Any Information That May Result in a Lower Sentence Under The Guidelines.  The government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963).

(5) The Defendant's Prior Record.  The defendant requests disclosure of his prior record.  Fed. R. Crim. P. 16(a)(1)(B).

(6) Any Proposed 404(b) Evidence.  To the extent that there is any such evidence, the government must produce evidence of prior similar acts under Fed. R. Evid. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  See United States v. Vega, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999).  The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized.  The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

(8) Request for Preservation of Evidence.  The defendant specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case.  This

request includes the contemporaneous, or "rough notes" of any arresting and interrogating officers.

(9) <u>Henthorn Material</u>.  In addition, Mr. Alcazar requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material.  <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>see also</u> <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996) (accord).  In addition, the defendant requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an <u>in camera</u> inspection.

(10) <u>Tangible Objects</u>.  The defendant requests the opportunity to copy as well as test, if necessary, all documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).

(11) <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief.  Fed. R. Crim. P. 16(a)(1)(E).  The defense requests that notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions and credentials of the government's expert.  The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert.  <u>See</u> <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . . .").

(12) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(13) <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness

1   has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland.

2        (14) Evidence of Criminal Investigation of Any Government Witness.  The defendant requests any

3   evidence that any prospective witness  is under investigation by federal, state or local authorities for any

4   criminal conduct.

5        (15) Evidence  Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.  The

6   defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show

7   that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired, and

8   any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

9   alcoholic.

10       (16) Witness Addresses.   The defendant requests the name and last known address of each

11   prospective government witness.  See United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense

12   counsel has equal right to talk to witnesses).  The defendant also requests the name and last known address

13   of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof)

14   who will not be called as a government witness.  United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

15   **Specifically, Mr. Alcazar requests the names and last known addresses of the percipient witnesses to**

16   **the crime charged, to wit, the seventeen (17) other individuals arrested along with Mr. Alcazar.**

17       (17) Statements Relevant to the Defense.  The defendant requests disclosure of any statement

18   relevant to any possible defense or contention that he might assert.  United States v. Bailleaux, 685 F.2d

19   1105 (9th Cir. 1982).  This includes all statements by percipient witnesses.

20       (18) Jencks Act Material.  The defendant requests production in advance of trial of all material,

21   including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed.

22   R. Crim. P. 26.2.  Advance production will avoid the possibility of delay at the request of the defendant to

23   investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account

24   of the witness' interview is sufficient for the report or notes to qualify as a statement under section

25   3500(e)(1).  Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952

26   F.2d 1101 (9th Cir. 1991) (holding that where an agent goes over interview notes with subject interview

27   notes are  subject to Jencks Act).

28   *//*

(19) <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(20) <u>Agreements Between the Government and Witnesses</u>.  In this case, the defendant requests identification of any cooperating witnesses who have committed crimes but were not charged so that they may testify for the government in this case.  The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to <u>United States v.  Sudikoff</u>, 36 F. Supp.2d 1196 (C.D. Cal.  1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u> which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

(21) <u>Informants and Cooperating Witnesses</u>.  To the extent that there was any informant, or any other tip leading to a TECS hit in this case the defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Alcazar.  The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(22) <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>.

1    Such information would include what, if any, inducements, favors, payments or threats were made to the

2    witness to secure cooperation with the authorities.

3        (23) <u>Personnel Records of Government Officers Involved in the Arrest</u>.  Defendant requests all

4    citizen complaints and other related internal affairs documents involving any of the immigration officers

5    or other law enforcement officers who were involved in the investigation, arrest and interrogation of

6    Defendant.  <u>See</u> <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of

7    these documents, defense counsel will be unable to procure them from any other source.

8        (24) <u>Inspection and Copying of A-File</u>.  Mr. Alcazar requests that this court order the government

9    to make all A-Files relevant to Mr. Alcazar available for inspection and copying.

10       (25) <u>Names of all percipient witnesses</u>.  **Mr. Alcazar requests the names of all percipient**

11   **witnesses to the arrest, including the seventeen (17) individuals who were arrested with Mr. Alcazar.**

12       (26) <u>Residual Request</u>.  Mr. Alcazar  intends by this discovery motion to invoke his rights to

13   discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

14   and laws of the United States.  Mr. Alcazar requests that the government provide his attorney with the above

15   requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

16                                              **III.**

17                            **<u>MOTION TO SUPPRESS STATEMENTS</u>**

18   **A.    <u>The Court Must Suppress Mr. Alcazar's Alleged Statements Because They Were Obtained</u>**
     **<u>During a Stop Unsupported By Reasonable Suspicion and In Violation of the Fourth</u>**
19   **<u>Amendment</u>**

20       The vehicle Mr. Alcazar was traveling in was stopped without reasonable suspicion.  This court

21   should preclude evidence obtained in violation of Mr. Alcazar's Fourth Amendment rights.  Temporary

22   detention of individuals by the police, even if only for a brief period and for a limited purpose, constitutes

23   a "seizure" within the meaning of the Fourth Amendment, and must be supported by at least reasonable

24   suspicion.  <u>See</u> <u>Delaware v. Prouse</u>, 440 U.S. 648, 653 (1979);  <u>United States v. Martinez- Fuerte</u>, 428 U.S.

25   543, 556 (1976).  A vehicle stop must be justified by specific, articulable facts sufficient to give rise to a

26   reasonable suspicion of criminal conduct.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  This is true in the context

27   of roving border patrol stops such as that executed by Agent Acosta.  <u>United States v. Brignoni-Ponce</u>, 422

28   U.S. 873 (1975) (roving border patrol agents must have reasonable suspicion, based on specific and

articulable facts, in order to initiate a stop); <u>United States v. Manzo-Jurado</u>, 457 F.3d 928 (9th Cir. 2006);

<u>United States v. Montero-Camargo</u>, 208 F.3d 1122.

      The existence of reasonable suspicion is evaluated under the totality of the circumstances. <u>Terry v.</u>

<u>Ohio</u>, 391 U.S. 1; <u>United States v. Arvizu</u>, 534 U.S. 266; <u>United States v. Montero-Camargo,</u> 208 F.3d 1122

(9th Cir. 2000). Various factors have been  taken into consideration when evaluating the existence of

reasonable suspicion to stop and enquire regarding alienage and immigration status, including: proximity

to the border; notoriety of the area for alien smuggling activity; and, the suspicious or evasive conduct of

the person stopped. <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873; <u>United States v. Manzo-Jurado</u>, 457

F.3d 928; <u>United States v. Montero-Camargo</u>, 208 F.3d 1122. Here, the totality of circumstances doe not

add up to reasonable suspicion. Specifically, Agent Acosta appears to have stopped the F-150 with no

articulable suspicion whatsoever.

      The <u>Arvizu</u> case demonstrates how the totality of the circumstances can rise to the level of

reasonable suspicion. 534 U.S. at 277. In <u>Arvizu</u>, the agent articulated the following facts:

1.    a magnetic sensor alerted the agent to the presence of a vehicle on an unpaved, seldom traveled road used by smugglers to avoid Border Patrol checkpoints, <u>Arvizu</u>, at 268;

2.    the sensor alert occurred during a change in shifts which would leave the area unpatrolled by the agents, <u>Id.</u>;

3.    the same sensor had detected a minivan using the same route several weeks before which resulted in a marijuana seizure, <u>Id.</u>, at 269-270;

4.    a second sensor signal indicated to the agent that the vehicle had turned onto another unpaved road on a route commonly used to circumvent checkpoints, <u>Id.</u>, at 270;

5.    when the agent intercepted the vehicle, it turned out to be a minivan, <u>Id.</u>;

6.    when the agent followed the minivan, he noted that the occupants, who appeared to be a family, behaved strangely, first ignoring him and then waving in a mechanical manner, <u>Id.</u>, at 270-271;

7.    the agent could see the children's knees, which indicated that their feet rested on some cargo. <u>Id.</u>, at 270;

8.    the van turned onto a third, even rougher unpaved road, away from any checkpoint, and away from any destination a family might want to reach for recreation, <u>Id.</u>, at 271; and

9.    a radio check by the agent indicated that the minivan was registered to an address four miles from the international border in a neighborhood notorious for smuggling activity, <u>Id.</u>, at 271.

      As a result, the agent in <u>Arvizu</u> had reasonable suspicion to perform an investigatory stop of the

minivan because he could:

//

//

1    infer from his observations, his registration check, and his experience that . . . [the minivan]
     had set out . . . along a little-traveled route used by smugglers to avoid the . . . checkpoint[s]
2    . . . at a time when officers would be leaving their ... shifts ... on unpaved and primitive
     roads.
3

4    Arvizu, 534 U.S. at 277.

5          In this case, the totality of the circumstances do not rise to a particularized suspicion to stop the

6    vehicle in which Mr. Alcazar was encountered.  The totality of the circumstances indicated to the officers:

7          1.        A Ford F-150 traveling down Highway 98 and turning onto Interstate 8.

8    Under Arvizu, this is a far cry from reasonable suspicion.  Even assuming that the entirety of I-8 is a high

9    crime area,[5] mere presence on that road is not enough to support a vehicle stop.  See Illinois v. Wardlow,

10   528 U.S. 119, 124 (2000) ("an individual's presence in an area of expected criminal activity, standing alone,

11   is insufficient to support a reasonable suspicion that this person is committing a crime").  A decision

12   otherwise would "draw into the law enforcement net a generality of persons unmarked by any really

13   articulable basis for reasonable suspicion."   Such a broad profile is unreasonable under the Fourth

14   Amendment, and unacceptable under Ninth Circuit case law.  Wardlow, 528 U.S. at 124; United States v.

15   Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002).

16         Further, all evidence—including Mr. Alcazar's statements—seized pursuant to Mr. Alcazar's

17   unlawful stop, unlawful arrest and unlawful search must be suppressed.  See United States v. Patzer, 277

18   F.3d 1080, 1086 (9th Cir. 2002) (reversing because, since the defendant's arrest was unlawful, "[t]he

19   evidence obtained after his arrest, including his own statements, his passenger's statements, and the physical

20   evidence found during the search of his vehicle, were 'fruit of the poisonous tree' and should have been

21   suppressed by the district court"); see also Wong Sun v. United States, 371 U.S. 471 (1963); Taylor v.

22   Alabama, 457 U.S. 687, 694 (1982); Castillo v. De La Renta, 806 F.2d 1071, 1076 (9th Cir. 1989).  The

23   suppression of evidence should include, but is not limited to, all tangible evidence and statements.  See e.g.,

24   Wong Sun, 371 U.S. 47; Taylor v. Alabama, 457 U.S. at 694; Patzer, 277 F.3d at 1080.  Therefore, this

25   Court should suppress all evidence related to the invalid stop.[6]

26

27         [5] Something not admitted or agreed to by Mr. Alcazar.

28         [6] This includes statements made by Mr. Alcazar at the time of the stop, as well as all statements made
     thereafter.  It also includes Mr. Alcazar's fingerprints.  Finally, it includes other identity evidence, including

                                                        10                              08CR2576-JM

1   **B.      Mr. Alcazar's Alleged Field Statements Must Be Suppressed Because the Government Cannot**

2   **Demonstrate Compliance With Miranda.**

3          Mr. Alcazar also moves to suppress the statements made at the time of the vehicle stop because they

4   were un-<u>Mirandized</u> fruits of custodial interrogation.  The prosecution may not use statements, whether

5   exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates

6   the use of procedural safeguards effective to secure the privilege against self-incrimination.  <u>Miranda v.</u>

7   <u>Arizona</u>, 384 U.S. 436, 444 (1966).[7]  Custodial interrogation is questioning initiated by law enforcement

8   officers after a person has been taken into custody or otherwise deprived of his freedom of action in any

9   significant way. <u>Id.</u>; <u>see</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969).  In <u>United States v. Beraun-Panez</u>, 812

10  F.2d 578 (9th Cir. 1987),  the Ninth Circuit found that an individual questioned out in an open field, who

11  was neither held nor handcuffed, nor told that he was under arrest, was nonetheless in custody for <u>Miranda</u>

12  purposes.

13          Once a person is in custody, <u>Miranda</u> warnings must be given prior to any interrogation.  <u>See</u>

14  <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980).  Those warnings must advise the

15  defendant of each of his or her "critical" rights.  <u>See</u> <u>United States v. Noti</u>, 908 F.2d 610, 614 (9th Cir.

16  1984).  In order for the warning to be valid, it cannot be affirmatively misleading.  <u>United States v. San</u>

17

18  Agents' identification of Mr. Alcazar, Mr. Alcazar's later statements identifying himse, and the official

19  records located by means of the unlawfully obtained evidence.  While the government may argue that <u>United</u>

    <u>States v. Guzman-Bruno</u>, 27 F.3d 420 (9th Cir. 1994) is to the contrary, Mr. Alcazar believes that case is

20  distinguishable, and in any event was erroneously decided.  <u>Guzman-Bruno</u> erroneously confused "identity"

    with "evidence" and erroneously held that the dictum in the Supreme Court decision in <u>I.N.S. v. Lopez-</u>

21  <u>Mendoza</u>, 468 U.S. 1032 (1984) precluded suppression of identity evidence that had been illegally obtained.

    In <u>United States v. Guevarra-Martinez</u>, 262 F.3d 757 (8th Cir. 2000), the Eighth Circuit correctly pointed out

22  that the Ninth Circuit erroneously confused the issue in <u>Lopez-Mendoza</u>—jurisdiction to try a

    defendant—with the government's ability to use illegally obtained evidence.  The Ninth Circuit has, indeed,

23  recognized that <u>Guzman-Bravo</u> does not hold as broadly as it has been taken in ensuing years.  <u>United States</u>

    <u>v. Garcia-Beltran</u>, 389 F.3d 864, 867 (9th Cir. 2004) ("<u>Lopez-Mendoza</u> does not preclude suppression of

24  evidence unlawfully obtained from a suspect that may in a criminal investigation establish the identity of the

    suspect").  Further, <u>Guzman-Bruno</u> has arguably been overruled.  <u>See</u> <u>$191,910.00 in U.S. Currency</u>, 16 F.3d

25  at 1064 ("On careful examination, <u>Lopez-Mendoza</u> merely reaffirms the longstanding rule that a court does

    not lose jurisdiction over an individual merely because the government secured his presence in the forum

26  through illegal means").  Given this state of the law, Mr. Alcazar also moves to suppress his A-file, which

    was obtained as a result of his illegally obtained statements and fingerprints.

27

           [7]  In <u>Dickerson v. United States</u>, 530 U.S. 428 (2000), the Supreme Court held that <u>Miranda</u> rights

28  are no longer merely prophylactic, but are of constitutional dimension.  <u>Id.</u> at 444 ("we conclude that <u>Miranda</u>

    announced a constitutional rule").

1  Juan-Cruz, 314 F.3d 384, 387 (9th Cir. 2002).  Rather, the warning must be clear and not susceptible to

2  equivocation.  Id.  If a defendant indicates that he wishes to remain silent or requests counsel, the

3  interrogation must cease.  Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 477, 484 (1981).

4       Here, Mr. Alcazar was apprehended by Agent Acosta with seventeen other individuals.  He was

5  asked about his alienage and his right to be in the United States.  Alienage is a key element of the charged

6  offense that the government must prove at trial beyond a reasonable doubt.  There is, however, no written

7  waiver executed by Mr. Alcazar or any other evidence demonstrating that he received Miranda warnings

8  and subsequent waived his rights before making those alleged statements.  Moreover, Agent Acosta does

9  not even claim in his report that Mr. Alcazar was given any Miranda warnings prior to questioning.

10  Accordingly, because Agent Acosta conducted a custodial interrogation of Mr. Alcazar without any Miranda

11  warnings and without obtaining a knowing wavier of his rights, Mr. Alcazar's alleged statements in the field

12  must be suppressed.

13  **C.**    **Mr. Alcazar's Statements From The First Station Interrogation Must Be Suppressed Because**

14  **the Government Failed to Comply with Miranda and San Juan Cruz.**

15       Mr. Alcazar was read a set of rights which informed him that he *did not* have a right to free counsel

16  at or around the time of his arrest.  See Form I-213, Record of Deportable/Inadmissible Alien, attached

17  hereto as Exhibit A, p. 2 ("Agent acosta arrested the individuals and advised them of their administrative

18  rights as per Service Form I-826 in the Spanish language").  Soon thereafter, Mr. Alcazar was interrogated.

19  It is not clear that he was advised of his Miranda rights, the interrogating Agent's report only indicates that

20  he was "read his rights" "per service form I-215B."  Regardless of whether he received any Miranda

21  warnings, the report indicates that Mr. Alcazar was not told that the earlier set of rights—which contradict

22  any Miranda rights he received and indicate that there is no right to counsel at no cost to the defendant—no

23  longer applied.  This is a plain violation of United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir.

24  2002) ([i]n order for the [Miranda] warning to be valid, the combination or the wording of its warnings

25  cannot be affirmatively misleading") (citing United States v. Connell, 869 F.2d 1349, 1352 (9th Cir. 1989)).

26  "The warning must be clear and not susceptible to equivocation."  Id.

27       Here, as in San Juan Cruz, Mr. Alcazar was read his administrative rights, and "soon thereafter" was

28  read his Miranda rights.  Id. at 386-87.  This was affirmatively misleading.  As in San Juan Cruz, "these

1   two sets of conflicting instructions were read to him one after another and, as a result, their meaning became

2   unclear." Id. at 388.  And as in San Juan Cruz, "when one is told clearly that he or she does not have the

3   right to a lawyer free of cost and then subsequently advised, '[i]f you can't afford a lawyer, one will be

4   appointed for you,' it is confusing.  Requiring someone to sort out such confusion is an unfair burden to

5   impose on an individual already placed in a position that is inherently stressful." Id.

6        Miranda affords all individuals the right to be informed, prior to custodial interrogation, "that [they]

7   have] the right to the presence of an attorney, and that if [they] cannot afford an attorney one will be

8   appointed for [them] prior to any questioning if [they] so desire[ ]." 384 U.S. at 479.  In order to be in

9   compliance with Miranda, before any custodial interrogation a person must receive meaningful "advice to

10  the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly

11  act." Coyote v. United States, 380 F.2d 305, 308 (10th Cir.), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19

12  L.Ed.2d 484 (1967).  Where the government fails to clarify the difference between the previously applicable

13  administrative rights, and the Miranda rights, and in fact, fails to advise the client that the Miranda rights

14  are distinct, and supercede the previously stated rights, suppression of any ensuing statements is required,

15  because the Miranda advisal was inadequate.  San Juan Cruz, 314 F.3d at 386-388.

16  **D.    Fruits Of The Third Round Of Interrogation Must Be Suppressed Because They Were
        Obtained In Violation Of *San Juan Cruz*; Safe Harbor*;* And *Missouri v. Siebert.***

17

18       The Government elicited a full confession from Mr. Alcazar on May 24, 2008, in violation of

19  Miranda and San Juan Cruz.  Then, he was again interrogated, this time while being videotaped, on May

20  25, 2008, in violation of San Juan Cruz and Siebert.  There was no effective warning provided during the

21  first round of interrogation (in the field), and no effective warning was given before the second round of

22  interrogation (because of the San Juan-Cruz violation).  Then Mr. Alcazar spent nearly a day in the hospital.

23  There was no cure or correction of any of the earlier errors prior to re-interrogation, and the third

24  interrogation, following his hospital stay, was part of a deliberate two-step (or more accurately three-step)

25  interrogation process.

26       First, the May 25, 2008 statements must be suppressed because the interrogation once again violated

27  San Juan-Cruz.  Mr. Alcazar still had not been told that his administrative rights no longer applied.  San

28  Juan-Cruz, 314 F.3d 387.

1    Further, the third interrogation violated 18 U.S.C. 3501(c).  United States v. Mitchell, 502 F.3d 931

2  (9th Cir. 2007) ("Section 3501(c) allows the government a six-hour safe harbor during which a confession

3  made while a person was under arrest or other detention in the custody of any law-enforcement officer or

4  law-enforcement agency shall not be inadmissible solely because of delay in bringing such person before

5  a magistrate judge").  The May 25 interrogation, once again eliciting essentially a full confession, was taken

6  at approximately 12:15 p.m. the day after Mr. Alcazar's arrest.  Rather than bring him in front of a

7  magistrate within a reasonable time, the Agents returned Mr. Alcazar from the hospital to be re-interrogated.

8    Finally, Mr. Alcazar's May 25 statements should be suppressed under Missouri v. Siebert, 542 U.S.

9  600, 609, 616-17 (2004), and United States v. Williams, 435 F.3d 1148, 1157 (9th Cir. 2006).  Even if Mr.

10  Alcazar's pre-Miranda statements were uncoerced and voluntary, any statements that followed the May 25,

11  2008 Miranda warnings must be suppressed because the agents exploited the form of Miranda warnings,

12  and never effectively apprised Mr. Alcazar of his rights.  Missouri v. Siebert, 542 U.S. 600, 616-17.

13    Siebert and Williams require suppression when there is "objective evidence" of deliberateness in a

14  two-step interrogation.  Williams, 435 F.3d at 1138.[8]  The Ninth Circuit has identified six factors the court

15  must consider when determining whether the government has shown the two-step process was not

16  deliberate:

> (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content
> of the two rounds of interrogation, (3) the timing and circumstances of both interrogations,
> (4) the continuity of police personnel, (5) the extent to which the interrogator's questions
> treated the second round of interrogation as continuous with the first and (6) whether any
> curative measures were taken.

20  Williams, 435 F.3d at 1160 (emphasis added).

21    The Williams factors weigh heavily against the government.  The pre-warning interrogations (plural)

22

23    [8]  Justice Kennedy wrote that:

> the two-step technique permits the accused to conclude that the right not to respond did not
> exist when the earlier incriminating statements were made. The strategy is based on the
> assumption that Miranda warnings will tend to mean less when recited midinterrogation, after
> inculpatory statements have already been obtained. This tactic relies on an intentional
> misrepresentation of the protection that Miranda offers and does not serve any legitimate
> objectives that might otherwise justify its use.

28 Siebert, 542 U.S. at 620-21. (Kennedy, J., concurring in the judgment).

1    were both complete, and arguably combine to establish all elements of the charges against Mr. Alcazar,

2    making the first <u>Williams</u> factor something that weighs against the government.  The second <u>Williams</u>

3    factor, the overlapping content of the pre-warning interrogations and the post-warning interrogations,

4    weighs against the government.  The agents questioned Mr. Alcazar about the same exact things: (1) when

5    he last entered the United States; (2) whether he had permission to be in the United States; (3) whether he

6    was a citizen of the United States or Mexico; (4) where he was born; (5) whether he had been previously

7    removed from the United States; and (6) whether he had reapplied for admission.  Indeed, both

8    interrogations also addressed Mr. Alcazar's intent and plans in the United States, something the government

9    will likely use to establish the necessary <u>mens rea</u> in an attempt case such as this one.

10   The third <u>Williams</u> factor, timing, suggests deliberateness on the part of the officers.  The agents

11   elicited a full confession.  Mr. Alcazar then complained of chest pain and went to the hospital.  Soon after

12   his release, the agents brought him back to the station, administered <u>Miranda</u> warnings, and then elicited

13   another full confession, using the same questions they had used the day before, this time videotaping the

14   confession.  <u>Id.</u> at 1160.

15   The fourth <u>Williams</u> factor also indicates deliberateness on the part of the officers.  While Agent

16   Acosta conducted the first round of interrogations, Agent De Vries conducted second-round interrogation,

17   and Agent Cruz carried out the third interrogation, they all work for the same agency, and either knew or

18   should have known that the multiple interrogations were covering the same ground.  Indeed, Agent Cruz,

19   who took the third round of statements, tells Mr. Alcazar at the end of the interview that he is already aware

20   of Mr. Alcazar's case, and had talked to his supervisor about Mr. Alcazar's medical condition.  This provides

21   an inference that he was aware of the prior interrogation.  Finally, the sixth <u>Williams</u> factor mandates

22   suppression.  Mr. Alcazar made an unwarned confession, then was taken to the hospital.  Thereafter, rather

23   than taking him to a judge, they returned him to the station to ask him the same questions, this time

24   videotaped.  At no point were any curative measures taken.

25   **E.    <u>Mr. Alcazar's Statements Must Be Suppressed As Involuntary.</u>**

26   This Court must make a factual determination as to whether a statement was voluntarily given prior

27   to its admission into evidence.  18 U.S.C. § 3501(a).  Where a factual determination is required, courts are

28   obligated by Fed. R. Crim. P. 12 to make factual findings.  <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601,

606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

Under section 3501(b), this Court must consider various enumerated factors in making the voluntariness determination, including whether the defendant understood the nature of the charges against his and whether she understood his rights.  Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors.  Mr. Alcazar accordingly requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any and all statements made by him were voluntary.

**F.    Mr. Alcazar Requests An Evidentiary Hearing On The Admissibility Of Any Of The Three Sets Of Statements.**

Because the government has not proven the admissibility of any of the statements, Mr. Alcazar moves this Court to suppress them.  If this Court is inclined to deny this motion, Mr. Alcazar requests an evidentiary hearing on the statements.

**IV.**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE ELEMENTS OF THE CHARGED OFFENSE**

The indictment must be dismissed because the government has failed to properly allege all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ."  Consistent with this Constitutional mandate, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added).  It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed.  See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. DuBo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and

1  (b). In <u>United States v. Salazar-Lopez</u>, ___ F.3d ___ 2007 WL 3085906 at *2 (9th Cir. Oct. 24, 2007), the

2  Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must

3  allege either that the defendant has been previously removed subsequent to a conviction, or it must allege

4  a specific date of the prior removal.  In this case, the indictment only alleges that Mr. Alcazar "was removed

5  from the United States subsequent to September 21, 2006."  The indictment does not allege either that this

6  removal occurred subsequent to a conviction or allege a specific date of an alleged removal.  Therefore,

7  because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

8  **V.**

9  **<u>MR. ALCAZAR MOVES TO DISMISS THE INDICTMENT BASED UPON A VIOLATION OF 18 U.S.C. § 3161(B)</u>**

10

11         The Government violated Mr. Alcazar's Sixth Amendment rights and his rights under the Speedy

12  Trial Act by failing to timely seek and file an indictment.  <u>See</u> <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972);

13  18 U.S.C. § 3161.  Under the Speedy Trial Act ("the Act")

14                 Any information or indictment charging an individual with the commission of an
       offense shall be filed within thirty days from the date on which such individual was arrested

15     or served with a summons in connection with such charges.

16  18 U.S.C. § 3161(b); <u>United States v. Pollock</u>, 726 F.2d 1456, 1462 (9th Cir. 1983); <u>United States v. Heldt</u>,

17  745 F.2d 1275, 1280 (9th Cir. 1984).  Here, the government did not indict Mr. Alcazar for over 70 days after

18  his arrest.  This violation requires dismiss of the indictment.  18 U.S.C. § 3162(a)(1) states in relevant part

19  that:

20                 If, in the case of any individual against whom a complaint is filed . . . no indictment or information
       is filed with the time limit required by section 3161(b) . . . such charge against that individual

21     contained in such complaint shall be dismissed . . .

22  18 U.S.C. § 3162(a)(1).

23         Where "the charges in the complaint and a later indictment are brought under the same statute, such

24  charges shall be dismissed under Section 3161(b), absent substantial discrepancies in time, place, and

25  manner between the underlying criminal episodes 'apparent on the fact of the complain.'" <u>United States v.</u>

26  <u>Palomba</u>, 31 F.3d 1456, 1464 (9th Cir. 1994) (quoting <u>Pollack</u>).

27         In this case, both the complaint and the indictment allege a violation of 8 U.S.C. § 1326.  The

28  following facts are relevant to the Court's adjudication of this motion:

1   //

2       (1)     On May 24, 2008, Mr. Alcazar was arrested;

3       (2)     On May 27, 2008, a complaint was filed charging a violation of 8 U.S.C. § 1326;

4       (3)     On May 28, 2008, an amended complaint was filed with the exact same charge;

5       (4)     On July 21, 2008, Mr. Alcazar stated on the record that he was rejecting the government's

6   pre-indictment offer. Despite the fact that the government had known for some time that Mr.

7   Alcazar was rejecting the offer, it did not seek to indict him prior to the hearing;

8       (5)     On August 8, 2008, the government filed a one-count indictment charging a violation of 8

9   U.S.C. § 1326(a) and (b).

10       There are <u>no</u> discrepancies (let alone substantial ones) in terms of "time, place, and manner between

11   the underlying criminal episodes" described in the Amended Complaint and the indictment, which was filed

12   over 30 (in fact over 70) days after Mr. Alcazar's arrest. <u>Palomba</u>, 31 F.3d at 1464. For these reasons the

13   indictment must be dismissed. <u>See</u> <u>id.</u>

14       After the court finds that an indictment must be dismissed under 3162(a), it decides if the dismissal

15   is without or without prejudice. 18 U.S.C. § 3162(a). To make this determination, the district court is to

16   examine, among others, the following factors:

17       the seriousness of the offense; the facts and circumstances of the case which led to
     thedismissal; and the impact of reprosecution on the administration of this chapter and on
18   the administration of justice.

19   18 U.S.C. 3162(a)(1). All three factors support this court's dismissal of the indictment <u>with</u> prejudice. First,

20   Mr. Alcazar is charged with attempted entry after deportation, which is by no means an offense so serious

21   that the court should allow re-indictment. It is, in essence, a status offense, and a victimless crime to which

22   the sentencing commission prescribes a base offense level of eight. Dismissal with prejudice is only

23   inappropriate in far more serious cases. <u>See</u> <u>United States v. Arrellano-Ochoa</u>, 461 F.3d 1142, 1147 (9th

24   Cir. 2006) (holding that possession with intent to distribute methamphetamine and cocaine were serious

25   crimes, which supported dismissing indictment without prejudice). In addition, § 1326 is not a complex

26   statute, and the case does not involve complex facts giving rise to difficulty in securing evidence or a timely

27   indictment.

28       Second, Mr. Alcazar did not contribute to the circumstances of the § 3162(b) violation. Mr. Alcazar

did ask for a single continuance of the disposition date, but that was only because he was unsuccessfully

attempting to contact the assigned Assistant United States Attorney.  Indeed, the proposed disposition

clearly failed on July 14, 2008, when Mr. Alcazar did not comply with the requirements of that disposition.

It was even clearer that it failed on July 18, when defense counsel spoke with the Assistant United States

Attorney and indicated that Mr. Alcazar was not accepting the offer.  Nonetheless, the government did not

indict Mr. Alcazar for another 21 days.  This, combined with the time from May 24, 2008, the date of Mr.

Alcazar's arrest, and June 8, 2008, when defense counsel received a written offer from the government

combines to 35 days in which Mr. Alcazar was completely devoid of any responsibility for the delay.  A

large portion of the rest of the other thirty-six days consisted of well attempts to reach the Assistant United

States Attorney to discuss the case.

Third, dismissal with prejudice is necessary to ensure that the Speedy Trial Act is meaningful.  If

the government can commit lengthy and flagrant violations of this statute, and suffer no real consequence,

the Congress' clear and unequivocal demand would be undermined.  It is a "settled and invariable principle,

that every right, when withheld, must have a remedy . . . ."  Marbury v. Madison, 5 U.S. 137, 147 (1803).

The only remedy that meaningfully enforces the will of Congress is dismissal with prejudice.

**VI.**

**MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS**

Defense counsel has received 75 pages of discovery in this case.  As information surfaces due to the

government providing discovery in response to these motions or an order of this court, and when defense

counsel has had further opportunity to speak with Mr. Alcazar, the defense will find it necessary to file

further motions, or to supplement existing motions with additional facts.  Moreover, the defense has been

investigating Mr. Alcazar' alleged alienage, and once all information is received, it is anticipated that further

motions will be filed. Particularly, once the government provides discovery, it may become necessary, upon

provision of discovery, to file motions to 1) suppress statements, 2) dismiss the indictment due to

misinstruction of the Grand Jury, 3) a motion based upon 8 U.S.C. § 1326(d).  Therefore, defense counsel

requests the opportunity to file further motions based upon information gained from discovery.

//

//

1

**VII.**

2

**CONCLUSION**

3

For the reasons stated above, Mr. Alcazar moves this Court to grant his motions.

4

Respectfully submitted,

5

6    Dated:  August 25, 2008                    */s/ DAVID M.C. PETERSON*
                                                DAVID M.C. PETERSON
7                                               Federal Defenders of San Diego, Inc.
                                                Attorneys for Mr. Alcazar
8                                               David_Peterson@fd.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated:  August 25, 2008                    _/s/ DAVID M. C. PETERSON_____
                                           Federal Defenders of San Diego, Inc.
                                           225 Broadway, Suite 900
                                           San Diego, CA  92101-5030
                                           (619) 234-8467  (tel)
                                           (619) 687-2666  (fax)
                                           David_Peterson@fd.org (email)