KAREN P. HEWITT
United States Attorney
W. MARK CONOVER
Assistant United States Attorney
California State Bar No. 236090
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5200/ (619)235-2757(Fax)
E-mail: mark.conover@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2576-JM |
| Plaintiff, | ) ) | DATE:  September 5, 2008<br>TIME:  11:00 a.m. |
| v | ) ) | GOVERNMENT'S RESPONSE AND OPPOSITION |
| PEDRO ALCAZAR, | ) ) | TO DEFENDANT'S  MOTIONS TO: |
| Defendant. | ) ) | (1)    COMPEL DISCOVERY/PRESERVE<br>EVIDENCE; |
| | ) ) | (2)    SUPPRESS STATEMENTS<br>(3)    DISMISS INDICTMENT FOR FAILURE TO<br>ALLEGE ESSENTIAL ELEMENTS; |
| | ) ) | (4)    DISMISS THE INDICTMENT FOR SPEEDY<br>TRIAL VIOLATION; AND; |
| | ) ) | (5)    GRANT LEAVE TO FILE FURTHER<br>MOTIONS |
| | ) ) | TOGETHER WITH STATEMENT OF FACTS AND<br>MEMORANDUM OF POINTS AND AUTHORITIES |
| | ) | |

/ / /

/ / /

08CR2576-JM

1    Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt,

2    United States Attorney, and W. Mark Conover, Assistant United States Attorney, hereby files its

3    Response and Opposition to the defendant's above-referenced motions.  This Response and Opposition

4    is based upon the files and records of the case together with the attached statement of facts and

5    memorandum of points and authorities.

6                                                      I.

7                              **STATEMENT OF THE CASE**

8    On June 23, 2008, an information was filed charging Pedro Alcazar ("Defendant") with two

9    felony counts of Illegal Entry, in violation of 8 U.S.C. § 1325.  On June 23, 2008, Defendant waived

10   indictment in open court.  On July 21, 2008, Defendant failed to plead guilty and the case was

11   transferred to Honorable Judge Jeffrey T. Miller.  A federal grand jury returned an Indictment charging

12   Defendant with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b), on August

13   6, 2008.  Defendant was arraigned on the Indictment and pled not guilty on August 8, 2008.  On August

14   27, 2008, Defendant filed motions to compel discovery and preserve evidence,  suppress statements,

15   dismiss the indictment for failure to allege the essential elements of the offense, dismiss the indictment

16   for speedy trial violation, and grant leave to file further motions.  The United States files the following

17   response in opposition to these motions

18                                                     II.

19                             **STATEMENT OF THE FACTS**

20   **A.    Defendant's Criminal and Immigration Record**

21   Defendant is a 44-year-old citizen of Mexico, without any permission to enter the United States.

22   He has two serious criminal convictions. On February 16, 1993, Defendant was convicted of importation

23   of marijuana in violation of 21 U.S.C. § 952/960 and received 21 months in custody.  On September 21,

24   2006, Defendant was convicted of Deported Alien Found in the United States, in violation of 8 U.S.C.

25   § 1326.  For this offense, his sentence was 30 month with 3 years of supervised release.

26   Defendant was ordered removed from the United States on April 26, 1994, after a hearing before

27   an immigration judge.   He was most recently removed from the United States on April 27, 2008.

28   / / /

1      **B.      Defendant's Apprehension**

2      On May 24, 2008, a Remote Video Surveillance Operator alerted United States Border Patrol

3  Agent Acosta to a Gray Ford F-250 heading west on Highway 98, a route commonly used by smugglers

4  and  illegal aliens.  The vehicle pulled onto I-8 and Agent Acosta pulled the vehicle over near the

5  "Coyote Bridges."  Agent Acosta encountered 17 individuals in the F-250.  Agent Acosta questioned

6  the individuals in the vehicle as to their citizenship.  One individual later identified as the Defendant,

7  stated that he did not have any legal immigration documents that would allow him to enter, reside or

8  work in the United States.  Agent Acosta arrested all 17 individuals and advised them of their

9  administrative rights as per Service Form I-816 in the Spanish Language.  All seventeen individuals were

10  transported to the El Centro Border Patrol Station for further processing.

11      Systems checks revealed the Defendant had a criminal record and had been previously deported

12  by an immigration judge.  At approximately 5:00 p.m., Defendant was read his Miranda rights.

13  Defendant stated that he understood his rights and was willing to answer questions without the presence

14  of an attorney.

15      Defendant stated that he last entered the United States in a vehicle that drove across the border

16  in a remote location in the desert and that he was not inspected by immigration officers upon entry.

17  Defendant stated that he is a citizen of Mexico and he does not have any immigration documents to

18  allow him enter or remain in the United States.  Defendant admitted that he had been previously

19  removed from the United States and that he had not requested permission to re-enter.  Defendant stated

20  that he was on his way to Santa Rosa, California where he intended to reside.

21                                    **III.**

22                          **DEFENDANT'S MOTIONS**

23      **A.      MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

24      As of the date of this Motion, the United States has produced 75 pages of discovery (including

25  reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's

26  prior convictions and immigration history), and 1 DVD-ROM containing Defendant's videotaped, post-

27  arrest statement.   The United States will continue to comply with its obligations under Brady v.

28  Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules

of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

### 1, 2.    Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.19; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659

F.2d 932, 941 (9th Cir. 1981).  In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

### 3.   *Brady* **Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963).  Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).  However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 4.    **Any Information That May Result in a Lower Sentence**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant.  In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

08CR1008-LAB

1  to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

2  [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

3  remains in value.").  Accordingly, Defendant's demand for this information is unwarranted.

4           **5.    Defendant's Prior Record**

5  _____The United States has already provided Defendant with a copy of his criminal record and related

6  court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

7           **6.    Any Proposed 404(b) or 609 Evidence**

8  _____The United States has complied and will continue to comply with its obligations under

9  Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already

10  provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

11           Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant

12  with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it

13  intends to use at trial.  See Fed. R. Evid. 404(b), advisory committee's note ("[T]he Committee opted

14  for a generalized notice provision which requires the prosecution to appraise the defense of the general

15  nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will

16  supercede other rules of admissibility or disclosure[.]").

17           The United States intends to introduce Defendant's prior conviction for being an illegal alien

18  found in the United States after deportation, which he sustained on November 15, 2006, as evidence of

19  knowledge, lack of mistake, and modus operandi under Fed. R. Evid. 404(b).  Further, the United States

20  intends to introduce statements made on that prior occasion under Fed. R. Evid. 404(b) as evidence of

21  modus operandi.  The United States has previously produced discovery on this incident.

22           The United States will comply with its obligations under Rule 404(b) with regard to "TECS"

23  records to the extent Rule 404(b) applies.  However, the United States objects to this request for "TECS"

24  records to the extent it constitutes rebuttal evidence because such evidence need not be produced in

25  advance of trial.  See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

26  ///

27  ///

28

08CR1008-LAB

### 7, 10.  Evidence Seized and Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial.  See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 8.  Request for Preservation of Evidence

The United States will preserve all evidence pursuant to an order issued by this Court.  The United States objects to an overbroad request to preserve all physical evidence.  The United States does not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from Defendant in the instant offense.

### 9.  *Henthorn* Materials

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality.  See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review or oversee the personnel files is unwarranted and unnecessary.  Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files.  Henthorn, 931 F.2d at 30- 31.  Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews.  The United States opposes the request for an order that the prosecutor personally review or oversee the review of personnel files.

1    **11.    Expert Witness**

2        The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G)

3    and provide Defendant with notice and a written summary of any expert testimony that the United States

4    intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

5    **12, 13, 15, 20, 23.    Evidence of Bias or Motive to Lie / Impeachment Evidence/**
**Evidence Affecting Perception, Recollection, Ability to**
6    **Communicate, or Truth Telling / *Giglio* Material**

7        The United States will comply with its obligations to disclose impeachment evidence under

8    *Giglio v. United States*, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment

9    evidence, if any exists, when it files its trial memorandum, although it is not required to produce such

10    material until after its witnesses have testified at trial or at a hearing.  See *United States v. Bernard*, 623

11    F.2d 551, 556 (9th Cir. 1979).

12        The United States recognizes its obligation to provide information related to the bias, prejudice

13    or other motivation of United States' trial witnesses as mandated in *Napue v. Illinois*, 360 U.S. 264

14    (1959).  The United States will provide such impeachment material in its possession, if any exists, at the

15    time it files its trial memorandum.  At this time, the United States is unaware of any prospective witness

16    that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her

17    testimony.  The United States is unaware of any evidence that any United States witness' ability to

18    perceive, recollect, communicate or tell the truth is impaired.

19    **14.    Evidence of Criminal Investigation of Any United States' Witness**

20        The United States objects to Defendant's overbroad request for evidence of criminal

21    investigations by federal, state, or local authorities into prospective government witnesses.  The United

22    States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and

23    all evidence that a prospective government witness is under investigation by federal, state or local

24    authorities.  Moreover, as discussed above, the United States has no obligation to disclose information

25    not within its possession, custody or control.  See *United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir.

26    1985); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files

27    outside of federal prosecutor's possession); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375

28    (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which

it was aware but over which it had no actual control); cf. <u>Beaver v. United States</u>, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information.   The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), when it files its trial memorandum.

### 16, 17, 25.   Names of Witnesses and Witness Addresses

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States.  <u>See</u> <u>United States v. Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996); <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert denied</u>, 419 U.S. 834 (1974).  None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses.  There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call.  Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial.  Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agents who apprehended him.  The names of these individuals have already been provided to Defendant.

### 17.   Statements Relevant to the Defense

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent.  Therefore, the United States will only disclose relevant statements <u>made by Defendant</u> pursuant to this request.

### 18.   Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act.  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

### 21, 22. Agreements/Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States

and potential witnesses.  However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required.  See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).   .

### 24.    Alien File ("A-File")

The United States objects to Defendant's request for a "full copy" of his Alien File ("A-File").  In addition, the United States objects to Defendant's request to inspect his A-File.  This information is equally available to Defendant through a Freedom of Information Act request.  Even if Defendant could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information.  The A-File contains information that is not discoverable like internal government documents and witness statements.  See Fed. R. Crim. P. 16(a)(2).  Witness statements would not be subject to production until after the witness for the United States testifies and provided that a "motion" is made by Defendant.  See Fed. R. Crim. P. 16(a)(2) and 26.2.  Thus, the A-File associated with Defendant need not be disclosed.

Defendant claims that the A-File must be disclosed because (1) it may be used in the United States' case-in-chief; (2) it is material to his defense; and (3) it was obtained from or belongs to him.  See Fed. R. Crim. P. 16(a)(1)(E).  The United States will produce documents it intends to use in its case-in-chief.  Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different.  See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).  However, Defendant has not shown how documents in the A-File are material.  Finally, Defendant does not own the A-File.  It is an agency record.  Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records).  Should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

### 26.    Residual Request

As indicated, the United States will comply with its discovery obligations in a timely manner.

///

///

B.      **SUPPRESS ANY STATEMENTS MADE BY DEFENDANT**

Defendant moves this Court for an order suppressing his statements. Defendant specifically asks for a suppression hearing to determine the admissibility of any statements. As explained further below, the United States does not believe that a suppression hearing is necessary to prove admissibility. Defendant's motion should be denied because (1) he failed to provide a declaration as required under the local rules, and on the merits because (2) there was reasonable suspicion for stopping the vehicle Defendant was riding in, (3) Defendant was not in custody when he made his incriminating field statements, (4) Defendant's post Miranda statements were voluntary and complied with Miranda, and (5) Border Patrol agents did not conduct a deliberate two-step interrogation. Moreover, any evidence derived from Defendant's statements should not be suppressed because the evidence was properly obtained without any due process violation.

### 1.   Deny Motion Because Defendant Failed To Comply With The Local Rules

This Court can and should deny Defendant's motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda

violation, clearly making it unnecessary to hold an evidentiary hearing in this case. <u>Cf. United States</u>

<u>v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be

held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to

enable the trial court to conclude that contested issues of fact exist." (citation omitted).

Defendant does not allege coercion, threats, or promises induced him to make his statements.

Defendant does not allege that law enforcement officers violated his constitutional rights by continuing

to question him after he invoked. "The fundamental import of the privilege while an individual is in

custody is . . .whether he can be interrogated . . .Volunteered statements of any kind are not barred by

the Fifth Amendment . . . ." <u>Miranda</u>, 384 U.S. at 478. Without interrogation, there can be no <u>Miranda</u>

violation, and a voluntary statement is admissible. <u>See Medeiros v. Shimoda</u>, 889 F.2d 819, 825 (9th

Cir. 1989). For all the above reasons, this Court should deny Defendant's Motion. <u>See Batiste</u>, 868 F.2d

at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the

defense fails to adduce specific and material disputed facts). For these reasons, Defendant's motion to

suppress statements should be denied.

## 2.    There Was No Fourth Amendment Violation

Defendant argues that the vehicle stop was an unreasonable search and seizure. The Government

recognizes that the Fourth Amendment applies to all seizures, even brief detentions that fall short of a

traditional arrest. <u>See United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975). For an investigatory

stop, however, the requisite burden is less demanding than probable cause and allows an officer to search

a vehicle based on the lower standard of reasonable suspicion. <u>See United States v. Sokolow</u>, 490 U.S.

1, 7-8 (1989). As a result, officers may stop a vehicle for investigatory purposes if they can articulate

facts that form a basis for a particularized suspicion of criminal activity. <u>See United States v. Cortez</u>,

449 U.S. 411, 417-18 (1981).

The requirement of a reasonable, or particularized, suspicion encompasses two elements. First,

the suspicion must be based on the totality of the circumstances; and second, it must arouse a suspicion

that the particular person to be stopped has committed, or is about to commit, a crime. <u>United States</u>

<u>v. Arvizu</u>, 534 U.S. 266, (2002); <u>United States v. Montero-Camargo</u>, 208 F.3d 1122, 1129 (9th Cir.

13

1   2000). Although a reasonable suspicion can be aroused through a myriad of observations, insights, and

2   actions, several generally accepted and widely factors have been enumerated.

3       Supreme Court precedent stresses the importance of recognizing that objective facts, when

4   viewed by trained law enforcement officers - even if meaningless to the untrained observer or consistent

5   with innocent travel - can be combined with permissible deductions from such facts to form a founded

6   suspicion to stop a vehicle. Arvizu, 534 U.S. at 277 (holding that the Border Patrol agent was entitled

7   to assess the situation in light of his specialized training and familiarity with the area); Cortez, 449 U.S.

8   419.

9       In Brignoni-Ponce, the Supreme Court set forth a non-exclusive list of factors upon which Border

10  Patrol agents may rely in finding reasonable suspicion: (1) the characteristics of the area in which they

11  encounter a vehicle; (2) the vehicle's proximity to the border; (3) usual patterns of traffic on the

12  particular road; (4) information about previous illegal border crossings in the area; (5) whether certain

13  vehicles are commonly used to transport contraband or aliens; (6) the driver's erratic behavior; (7) a

14  heavily loaded vehicle or an unusual number of passengers. 422 U.S. at 884-85; see also, United States

15  v. Olafson, 213 F.3d 435, 439 (9th Cir. 2000).

16      In this case, the area where agents encountered Defendant was close to the border. A Remote

17  Video Surveillance Operator alerted Agent Acosta to a Gray Ford F-250 as potentially smuggling aliens.

18  The vehicle was traveling in a route commonly used by smugglers and  illegal aliens. The vehicle

19  contained 17 individuals making it nearly impossible not to show signs of being loaded down. All of

20  these circumstances, plus the agents' collective training and experience, led to a reasonable suspicion

21  that the vehicle may have contained illegal immigrants.

22      To the extent that Defendant seeks to suppress evidence that he was found inside the United

23  States, "The Ninth Circuit has consistently held that evidence concerning the identity of a defendant,

24  obtained after an illegal police action, is not suppressible as 'fruit of the poisonous tree.'"

25  United States v. Garcia-Beltran, 443 F.3d 1126, 1132 (9th Cir. 2005).

26      **3.    Defendant Was Not In Custody When He Made Field Admissions**

27      When a person has been deprived of his or her freedom of action in a significant way,

28  Government agents must administer Miranda warnings prior to questioning the person. Miranda v.

14

<u>Arizona</u>, 384 U.S. 436 (1966). Such a requirement thus has two components: (1) custody, and (2) interrogation. <u>Id.</u> at 477-78. Whether a person is in custody is measured by an objective standard. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984). A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." <u>United States v. Booth</u>, 669 F.3d 1231, 1235 (9th Cir. 1981); <u>see</u> <u>also</u> <u>United States v. Beraun-Perez</u>, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1) the language used to summon the individual; 2) the extent to which the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual." <u>Id.</u> (citation omitted).

The Supreme Court held that in the "general interest of effective crime prevention and detection...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968). This authorized investigatory detention or stop falls short of custody when a Border Patrol agent does not have enough information to execute an arrest, and must investigate further through brief, routine questioning about citizenship and immigration status. <u>See</u> <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878-88 (1975); <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731-32 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).

The case of <u>Florida v. Royer</u>, 460 U.S. 491 (1983), is instructive. In Royer, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug courier profile." As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time. Royer said, "Yes." <u>Id.</u> at 493-494. Upon request, Royer produced his airline ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name. Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. <u>Id.</u> at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. <u>Id.</u>

1    In deciding the case, the Supreme Court noted:

2        [L]aw enforcement officers do not violate the Fourth Amendment by merely
         approaching an individual on the street or in another public place, by asking him
3        if he is willing to answer some questions, by putting questions to him if the person
         is willing to listen, or by offering in evidence in a criminal prosecution his
4        voluntary answers to such questions.  (Citations omitted).  Nor would the fact that
         the officer identifies himself as a police officer, without more, convert the
5        encounter into a seizure requiring some level of objective justification.  United
         States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497
6        (1980) (opinion of Stewart, J.).  The person approached, however, need not answer
         any question put to him; indeed, he may decline to listen to the questions at all and
7        may go on his way.  (Citation omitted).

8    Id. at 497-98 (citations omitted).

9        Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and

10   Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached

11   and questioned a worker in a field after a number of other workers had fled upon seeing the Border

12   Patrol.  The Ninth Circuit found that no seizure had taken place in regard to the initial questioning of

13   the individual by the Border Patrol.  The Court stated that "[f]rom the record, it does not appear that the

14   Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test.

15   The officer approached the petitioner in an open field and asked him several questions to which he

16   responded voluntarily.  There is no evidence of the use of physical force, a display of a weapon, or the

17   threatening presence of several officers."  Id. at 1311.

18       Detaining a person for routine border questioning is not custodial.  United States v. Troise, 796

19   F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.),

20   modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's denial of a

21   defendant's motion to suppress his field statements).  In Galindo-Gallegos, patrol agents apprehended

22   the defendant and others running near the Mexican border.  Once they had the 15 or 20 people seated,

23   an agent asked them what country they were from and whether they had a legal right to be in the United

24   States.  Id.  The defendant said that he was from Mexico and had no such right.  Id.  The border patrol

25   agents did not advise the group of their Miranda rights prior to this questioning.  Id.  After the defendant

26   admitted that he was an alien illegally in the United States, he and the others were handcuffed and put

27   into one of the vehicles.  Id.  The Ninth Circuit affirmed the district court's decision not to suppress the

28   defendant's field statements.  Id.

16

This case is analogous to Royer, Benitez-Mendez, and Galindo-Gallegos. Here an Agent encountered 17 individuals in an area known to be used for illegal entry and identified himself as a Border Patrol agent. He conducted a field interview of Defendant as to his citizenship and right to be in the United States. Defendant responded that he was a citizen of Mexico with no legal right to be in the United States. See Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible).

Defendant's field admissions were made during a brief investigatory stop. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law enforcement may make a brief investigatory stop and ask questions about citizenship and immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that persons subjected to brief investigatory detentions are not entitled to Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of any suggestion that the officers physically restrained Defendant or restricted his liberty in any meaningful way. Further, the fact that officers were armed or displayed badges does not turn a consensual encounter into a custodial situation. See United States v. Drayton, 536 U.S. 194, 204-205 (2002). During this questioning, Defendant was not placed in handcuffs or searched. There is simply nothing to suggest that Defendant was in custody during his field interview and his statements to officers in the field are admissible at trial.

Defendant, however, cites United States v. Beraun-Panez, 830 F.2d 127 (9th Cir. 1987), in support of his argument that he was in custody at the time of his field admission. [See Defendants' Motion to Dismiss the Indictment, Docket No. 15, at 5-6.] However, this case is distinguishable. In Beraun-Panez, a subject was separated from his co-worker in a remote rural location prior to questioning. Galindo-Gallegos, 244 F.3d at 731 (citing Beraun-Perez, 830 F.2d at 581-82). The Ninth Circuit factually distinguished Beraun-Perez in Galindo-Gallegos, holding that the facts in the latter were more analogous to Berkmer v. McCarty, where the Supreme Court held that questioning in public where witnesses are likely and available mitigates against the risk of harms identified in Miranda. See Galindo-Gallegos, 244 F.3d at 732.

/ / /

### 4.    The Government Properly Mirandized Defendant.

In this case, <u>Miranda</u> warnings did precede custodial interrogation.  Any questions that were asked prior to <u>Miranda</u> warnings being given were solely biographical-type questions.  <u>United States v. Washington</u>, 462 F.3d 1124, 1132-1133 (9th Cir. 2006).  Accordingly, agents did not violate <u>Miranda</u> by asking routine booking questions prior to providing Defendant with his <u>Miranda</u> warnings.

### a.    Defendant's Statements Were Voluntary.

No threats, physical intimidation, or psychological pressure was exerted by the agents to induce Defendants' statements.  <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976); <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963).  Additionally, Defendants have not complied with Criminal Local Rule 47(g)(1) and (2), which requires any motion to suppress statements also accompany a declaration regarding the facts and circumstances surrounding the motion to suppress.  While the Government argues that Defendants' statements were not coerced or involuntarily provided and argues that any <u>Miranda</u> waiver was voluntary, the Government does not oppose an evidentiary hearing conducted by the court on this issue.

According to <u>Davis v. Washington</u>, 512 U.S. 452, 458 (1994), and <u>United States v. Younger</u>, 398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she effectively waives the right to counsel.  In this case, defendants were asked whether they wanted to speak with agents after being read their <u>Miranda</u> rights.  Both defendants waived their <u>Miranda</u> rights and agreed to speak to agents.  As stated by the Ninth Circuit, "the suspect must actually invoke the right to counsel in order for officers to be barred from questioning the suspect." <u>Washington</u>, 462 F.3d at 1134.  Indeed, if "a suspect merely makes an equivocal or ambiguous reference to an attorney, this is insufficient to require the cessation of questioning." <u>Id.</u> (citing to <u>Davis</u>, 512 U.S. at 459; <u>Younger</u>, 398 F.3d at 1187). In this case, Defendants made no reference to talking to an attorney nor requested to speak to an attorney after they had received their <u>Miranda</u> warnings.  Accordingly, Defendant's statements should not be suppressed, because no violation of <u>Miranda</u> occurred.

### 5.    Border Patrol Agents Did Not Conduct a Deliberate Two-Step Interrogation

Relying on the Supreme Court's decision in <u>Missouri v.Seibert</u>, 124 S.Ct. 2601 (2004), Defendant next contends his statements taken at the Border Patrol station following <u>Miranda</u> warnings should be suppressed in light of the fact that his post-Administrative Rights pre-<u>Miranda</u> statement was

elicited without <u>Miranda</u> warnings. However, Defendant's post-<u>Miranda</u> statement obtained by Border Patrol agents was not taken in violation of <u>Seibert</u> or the other controlling Supreme Court case, <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985).

This case does not reflect the type of situation faced by the Supreme Court in <u>Seibert</u>. In <u>Seibert</u>, the Supreme Court suppressed post-<u>Miranda</u> statements where "officers interrogated Seibert at length before giving the <u>Miranda</u> warning and gave her only a short break without any change of location after she confessed, and then the same officer from the prewarning interrogation expressly used her unwarned statements to obtain a warned confession." <u>United States v. Williams</u>, 435 F.3d 1148, 1155 (9th Cir. 2006). The egregious nature of the questioning in <u>Seibert</u> is in sharp contrast with the questioning that took place in this case. In fact, this case more closely resembles the situation in <u>Elstad</u>. In <u>Elstad</u>, "a burglary suspect . . . made incriminating comments to a police officer at his home without first receiving a <u>Miranda</u> warning. Officers then took him to the county sheriff's office, placed him in an interrogation room, read him his <u>Miranda</u> rights and questioned him at length." <u>Id.</u> at 1151. Elstad subsequently "expanded significantly on his earlier statements and made a full confession" – this confession occurred 30 minutes after the initial inculpatory comments made by Elstad. <u>Id.</u> The Supreme Court did not suppress the subsequent confession, and held that a "suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite <u>Miranda</u> warnings." <u>Elstad</u>, 470 U.S. at 318. The same should hold true in this case.

In interpreting the interaction between <u>Seibert</u> and <u>Elstad</u>, the Ninth Circuit, relying on the numerous opinions in <u>Seibert</u>, held "that where law enforcement officers <u>deliberately</u> employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a <u>reasonable</u> person in the suspect's shoes of his rights, the trial court should suppress the confession." <u>Williams</u>, 435 F.3d at 1158. However, "[i]n situations where the two-step strategy was not deliberately employed, <u>Elstad</u> continues to govern the admissibility of postwarning statements." <u>Id.</u>

In applying <u>Seibert</u>, the initial inquiry is whether "law enforcement officers deliberately employ[ed] a two-step interrogation to obtain a confession . . . ." <u>Williams</u>, 435 F.3d at 1158. The Ninth Circuit held that "in determining whether the interrogator deliberately withheld the <u>Miranda</u>

1  warnings, courts should consider whether objective evidence and any available subjective evidence, such
2  as an officer's testimony, support an inference that the two-step interrogation procedure was used to
3  undermine the <u>Miranda</u> warning." <u>Id.</u> at 1158-59.  The Ninth Circuit further noted that "objective
4  evidence would include the timing, setting and completeness of the prewarning interrogation, the
5  continuity of police personnel, and the overlapping of the pre- and postwarning statements." <u>Id.</u> at 1159.

6        The Ninth Circuit upheld a district court's denial of a defendant's motion to suppress based on
7  a similar argument raised by Defendant.  In <u>United States v. Narvaez-Gomez</u>, 489 F.3d 970 (9th Cir.
8  2007), the Border Patrol agent who transported the defendant to the station asked the defendant whether
9  he had ever been arrested by Border Patrol and whether he had ever been deported.  <u>Id.</u> at 973.  Later,
10 another Border Patrol agent advised Defendant of his <u>Miranda</u> rights, which he acknowledged and
11 waived.  <u>Id.</u>  The <u>Narvaez-Gomez</u> Court looked to the brief, informal setting of the pre-<u>Miranda</u>
12 interrogation, the second agent's sole involvement in the post-warning interrogation and the lack of
13 reference to the pre-warning statements during the more comprehensive post-warning interrogation.  <u>Id.</u>
14 at 974.  The Ninth Circuit also noted that the change in setting and time span of approximately four
15 hours between statements indicate a lack of deliberateness.  <u>Id.</u>

16        Here, the facts of this case likewise do not support the conclusion that a two-step interrogation
17 was used by agents to negate Defendant's rights.  Agents advised Defendant of his administrative rights.
18 After agents determined Defendant was subject to criminal prosecution and advised Defendant that his
19 administrative rights no longer applied, agents advised Defendant of his <u>Miranda</u> rights.  Defendant was
20 questioned and then taken to the hospital.  Defendant was questioned again once he was released from
21 the hospital.  Thus, the disconnect between the purposes of the separate questioning, the time span
22 between the two interviews, all show that the agents did not engage in a deliberate two-step interrogation
23  to undermine Defendant's <u>Miranda</u> rights but rather felt the defendant may be in need of some medical
24 attention.  As such, Defendant's motion should be denied.

25        For all of the foregoing reasons, the Court should deny Defendant's motion to suppress <u>all</u>
26 statements.
27 / / /
28 / / /

1    **C.    DISMISS INDICTMENT BECAUSE IT FAILS TO ALLEGE ELEMENTS**

2        **1.    Failure to Set Out Date of Prior Felony Conviction and Prior Removal**

3        Defendant argues that the Court should dismiss the Indictment for failure to allege both the dates

4    of a previous felony conviction and of a previous removal from the United States, subsequent to that

5    conviction.  This argument also lacks merit.

6        As the Ninth Circuit teaches in its decision in United States v. Salazar-Lopez, 506 F.3d 748 (9th

7    Cir. 2007), "the date of the removal, or at least the fact that [Defendant] had been removed after his

8    conviction" should be alleged in the indictment. Id. at 752.  The indictment addressed by the Ninth

9    Circuit in Salazar-Lopez did not have the requisite language, and therefore the Court performed a

10   harmless error analysis. Id. at 752-755.  Here, however, the Indictment expressly states: "It is further

11   alleged that defendant RUDOLFO TORREZ was removed from the United States subsequent to

12   December 13, 2005." That date correlates with Defendant's prior conviction and is consistent with

13   Salazar-Lopez.  As such, the Court should deny Defendant's motion to dismiss.

14       **D.    DISMISS INDICTMENT BASED UPON VIOLATION OF 18 U.S.C.§ 3161(B)**

15       Defendant's Sixth Amendment rights nor his rights under the Speedy Trial Act have been

16   violated and thus the indictment should not be dismissed.  The following facts are relevant to the Court's

17   adjudication of this motion:

18       1.    On May 24, 2008, Defendant was arrested.

19       2.    On May 27, 2008, a complaint was filed charging Defendant with violation of 8 U.S.C.

20             § 1326.

21       3.    On May 28, 2008, an amended complaint was filed charging Defendant with the same

22             charge only being from Mexico rather than Honduras.

23       4.    On June 23, 2008, Defendant waived indictment indicating acceptance of the

24             government's offer.

25       5.    On June 23, 2008, Defendant was arraigned on a two count information.

26       6.    On July 17, 2008 Defense counsel left AUSA Melendres a voice message stating his

27             client was no longer going to be accepting the government's offer.

28       7.    On July 21, 2008, Defendant failed to plead guilty in court.

08CR1008-LAB

8.      On August 6, 2008, Defendant was indicted.

9.      On August 8, 2008, Defendant was arraigned on the indictment.

Any delay in arraigning Defendant on the indictment was due the Defendant's request for a continuance, having accepted the governments pre-indictment offer, having waived indictment indicating his intent to go forward by information, and then failing to plead guilty as agreed.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's suppression motion be denied.

DATED:      September 4, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ W. Mark Conover
W. MARK CONOVER
Assistant U.S. Attorney

22

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08cr2576-JM |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| PEDRO ALCAZAR, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, W. MARK CONOVER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS, TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

David Peterson
Federal Defenders Of San Diego, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2008.

s/ W. Mark Conover
W. MARK CONOVER

08CR1008-LAB